# GARFUNKEL WILD, P.C.
## ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL (516) 393-2200 • FAX (516) 466-5964
www.garfunkelwild.com

MICHAEL J. KEANE, JR.
Partner
Licensed in NY, NJ, CT
Email: mjkeane@garfunkelwild.com
Direct Dial: (516) 393-2538

FILE NO.: 17820.0002

July 16, 2025

**By ECF**

The Honorable Frederic Block
United States District Court for the
Eastern District of New York
225 Cadman Plaza East, Brooklyn, NY 11201

    Re:    *Ashley Albert v. Jonathan Schnapp et al.*
            Civil Action No. 1:25-cv-3013

Dear Judge Block:

    We represent Defendant and Counterclaim Plaintiff Jonathan Schnapp in the referenced matter. Pursuant to Your Honor's Individual Motion Practices and Rules § 2(A), we submit this letter to request a pre-motion conference in anticipation of Mr. Schnapp's filing of a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.

## BACKGROUND

    This action arises from a dispute between co-founders of Biscuits & Tangs, LLC (the "Company"), the parent company of The Royal Palms Shuffleboard Club with locations in Brooklyn and Chicago (the "Clubs"). Mr. Schnapp and Plaintiff Ashley Albert each own 50% of the Company and, until recently, served as equal Managers pursuant to the Company's Operating Agreement.

    In December 2024, Mr. Schnapp properly invoked the deadlock resolution mechanism set forth in the Operating Agreement (Verified Counterclaim, Exh. 1, Doc. No. 11) by offering to either purchase Ms. Albert's interest in the Company or sell his own to her for $1.4 million. Ms. Albert thereafter did not comply with such buy-sell process (deeming Schnapp's offer to buy, accepted and final), but the parties nevertheless attempted to resolve the dispute by permitting Ms. Albert to buy under reservation of rights. However, Ms. Albert then began a campaign of delay, refusing to proceed with the deal despite her obligation to do so. These acts are detailed in the Verified Counterclaim.

**The Estate Planning Transfer**

    In February 2025, while the parties were working toward what was believed to be an imminent closing, Mr. Schnapp created the Schnapp Family Business Trust (the "Schnapp Trust")

as part of his estate and tax planning. The purpose of the Trust was limited: to serve as an intermediary to hold proceeds from the anticipated sale of his membership interest and manage those funds in accordance with his estate plan. To prepare for closing, the necessary transfer documentation was executed, including a Membership Interest Purchase Agreement between Mr. Schnapp and the Schnapp Trust. This transfer was expressly permitted under Section 9.1(b) of the Operating Agreement, which allows Members to transfer their interests "to one or more trusts for estate planning purposes" without the consent of the other Member.

Consistent with this provision, the governing trust documents[1] confirm that: (i) the Trust was created solely to receive sale proceeds; (ii) the Trustee acted exclusively at the direction of Mr. Schnapp; (iii) the Trust acquired no voting, managerial, or operational rights in the Company; and (iv) at all times, Mr. Schnapp retained full governance authority and control over the interest.[2]

**<u>Ms. Albert's Improper Removal and Conduct</u>**

Despite knowing the temporary and limited nature of the estate-planning transfer, Ms. Albert seized on this temporary and fully authorized estate-planning transfer as a pretext to unilaterally remove Mr. Schnapp as Manager. She relied on Section 6.11 of the Operating Agreement—a provision that applies only when a Manager "ceases to be a Member." Moreover, she failed to deliver the "Member Consent" purporting to remove Mr. Schnapp.

Following this unauthorized and procedurally defective removal, Ms. Albert locked Mr. Schnapp out of Company systems and communications, excluded him from management functions, assumed sole control over the Company, and advised investors that Mr. Schnapp was no longer a Manager of the Company. In doing so, she has made unilateral "Major Decisions" in violation of Section 6.2 of the Operating Agreement, which requires written consent of both Managers for key actions, including: (i) making purchases or entering contracts exceeding $5,000; (ii) hiring or terminating employees; (iii) setting compensation; (iv) resolving investor disputes; and (v) making changes to the Clubs' branding, logo, or décor.

Ms. Albert has violated these provisions by hiring senior staff, modifying the food and beverage model, undertaking renovations, making inappropriate comments to investors about Mr. Schnapp, and otherwise mismanaging operations. As a result, the Company's performance has declined and losses have mounted.

## **<u>RISK OF IRREPARABLE HARM AND RELIEF TO BE SOUGHT</u>**

The status quo should be restored. Initially, under the good faith belief that the Buy/Sell transaction would close and that he would sell his interest in the Company, Mr. Schnapp was

---

[1] Mr. Schnapp will also submit a declaration from the trustee.
[2] This issue is also moot. On March 26, 2025, the Trust transaction was rescinded, retroactive to February 18, 2025, after Mr. Schnapp's estate counsel advised that the anticipated tax benefits would not materialize.

willing to allow some flexibility in management. But, on May 30, 2025, after Mr. Schnapp executed and sent final transaction documents to Ms. Albert's counsel, Ms. Albert refused to sign and filed this lawsuit and unilaterally assumed control of the Company.

As a result, Mr. Schnapp is suffering ongoing and irreparable harm. He has been stripped of his governance role, excluded from operations and internal communications, and denied access to critical Company infrastructure. Compounding this harm, Mr. Schnapp—not Ms. Albert—remains the personal guarantor on a Company-related lease, exposing him to potential multi-million-dollar liabilities, while being deprived of any ability to control business decisions, mitigate risks, or preserve enterprise value. Ms. Albert has also begun making sweeping changes to the identity and character of the Clubs—changes that are not easily reversible. This all occurred with Mr. Schnapp as a 50% owner! Making matters worse, Ms. Albert resides in California and is rarely present at the Clubs. She has delegated day-to-day management responsibilities to a newly appointed individual who has not been vetted or approved by Mr. Schnapp.

Plainly, Courts in this Circuit have consistently held that deprivation of control in a closely held company, particularly when tied to reputational damage and personal financial exposure, constitutes irreparable harm. *See Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003); *Street v. Vitti*, 685 F. Supp. 379 (S.D.N.Y. 1988). Accordingly, Mr. Schnapp now seeks to move for a preliminary injunction to:

(i) Declaring that he remains a Manager of the Company;
(ii) Enjoining Ms. Albert from making Major Decisions without his written consent;
(iii) Prohibiting Ms. Albert from representing to third parties that Mr. Schnapp has been removed as Manager; and
(iv) Requiring Ms. Albert to restore his access to Company systems and communications.

## **CONCLUSION**

In light of the urgency of the harm and Ms. Albert's continuing unilateral conduct, we respectfully request that the Court schedule a pre-motion conference at its earliest convenience and permit expedited briefing on the anticipated motion for preliminary injunction and temporary restraining order.

We are available at the Court's convenience and thank Your Honor for considering this request.

Very truly yours,

*/s/ Mickey Keane*

Michael J. Keane, Jr.

GARFUNKEL WILD, P.C.

4924-6279-6373v.3